QUESTIONS: 1. Is interest accruing from the investment of county funds (general fund, road and bridge fund, fine and forfeiture fund, etc.) which are in the custody of a clerk of the circuit court in his capacity as custodian of county funds, Art. VIII, s. 1(d), State Const., to be deemed income of the office of such clerk pursuant to s. 28.33, F.S.? 2. What is the duty of the clerk of the circuit court pursuant to s. 28.33, F.S., to invest moneys deposited in the registry of the court? 3. May moneys deposited in the clerk's office pursuant to s. 713.24(1)(a), F.S., be invested by the clerk in an interest-bearing account?
SUMMARY: Under s. 28.33, F.S., interest accruing from the investment of county funds in interest-bearing certificates, savings accounts, or other obligations made by the circuit court clerk at the direction of the board of county commissioners, as authorized by s. 125.31, F.S., or on his own initiative, as authorized by s. 28.33, supra, is deemed to be income of the office of the clerk. Moneys deposited in the registry of the court, including funds deposited under the Mechanics' Lien Law, s.713.24(1)(a), F.S., to free real property from a lien, may at the clerk's discretion be deposited in interest-bearing certificates or accounts; and, except for deposits made in connection with eminent domain proceedings under s. 74.051, F.S., the income therefrom will be income of the clerk's office. AS TO QUESTION 1: As the constitutional "custodian of all county funds," Art. VIII, s. 1, State Const., the circuit court clerk is required to receive on behalf of the county all moneys payable to the county. As clerk of the circuit court he is the custodian of moneys in the registry of the court in connection with court litigation. He is required to deposit all of such funds promptly into the state or county treasury, s. 116.01, F.S., and to keep accurate books of account and records concerning such funds — both as clerk of the court and as ex officio clerk of the board of county commissioners. Section 116.07, id. Until 1970, he had no statutory authority to invest any of the funds in his custody in interest-bearing accounts. In that year, by Ch. 70-31, Laws of Florida, the clerk was authorized to invest court registry funds held longer than 30 days "provided, however, that such deposited funds must be fully available for withdrawal on demand." Because of federal regulations prohibiting the payment of interest on demand deposits, the proviso to Ch. 70-31 nullified the purpose and intent of the act; however, as noted in AGO 070-108, there was no statutory impediment to the investment by the clerk, with the court's and the parties' approval, of court registry funds in interestbearing "time deposits" such as certificates of deposits or treasury bills. On the other hand, the boards of county commissioners have long had the authority to provide, by resolution, for the investment of "any surplus public funds in their control or possession" in obligations of the United States Government. See Ch. 21691, 1943, Laws of Florida, as amended by Ch. 73-83, id. (Section 125.31, F.S.) This act provides that, for investment purposes, "surplus funds" mean funds "in any general or special account or fund of the county held or controlled by the county commissioners of such county which in reasonable contemplation will not be needed for the purposes intended within a reasonable time from the date of such investment." (As originally enacted, the funds must not be needed for 6 months; as amended in 1967 by Ch. 67-474, Laws of Florida, for 10 days; and as amended in 1973, for a "reasonable time.") This statute does not direct the fund to which or into which the interest shall be credited or deposited; and, presumably, the income from the investment has been credited to or deposited back into the fund from which the surplus funds were taken for investment, in the absence of any statutory directive. It should also be noted that many circuit court clerks still operate their offices as "fee" officers — that is, they pay their salaries and the expense of operating their offices from the fees or "service charges" and commissions to which they are entitled by law, ss. 28.24 and28.241, F.S., and other applicable statutes. If these fees and commissions are inadequate in any given year to meet the operating expenses of the office and pay the salary to which the clerk is entitled under Ch. 145, F.S., he must rely upon the "largesse" of the board of county commissioners for an additional sum to pay any deficiency in his salary. See s. 145.141. (Clerks who have become "budget" officers under the authority of s. 145.022 turn over all fees and commissions to the board of county commissioners and receive one-twelfth of their annual salary and budgeted office expenses each month. Attorney General Opinion 061-151.) Each circuit court clerk, whether a fee or a budget officer, is required to report the amount of fees and commissions collected during the preceding fiscal year to the board of county commissioners and "the amount of net income or unexpended budget balance as of the close of the fiscal year," and to pay into the county general fund "all money in excess of the sum to which he is entitled under the provisions of chapter 145." Section 218.36, F.S. It was against this factual background that the 1973 act in question, Ch. 73-282, Laws of Florida (s. 28.33, supra), was adopted. It reads as follows: The clerk of the circuit court in each county shall make an estimate of his projected financial needs for the county and shall invest any funds in designated depository banks in interest-bearing certificates or in any direct obligations of the United States in compliance with federal laws relating to receipt of and withdrawal of deposits. All investments shall be open for bid to all qualified depositories in the county. The clerk shall select the highest and best bid for deposit. All bids received by the clerk shall include, but not be limited to, the interest rate to be earned and the total amount of dollar return to be paid to the clerk. In the event of a like bid between two or more banks, the moneys shall be divided and deposited in each bank, so long as the total interest income from the divided deposits will not be less than the total interest income had the deposits not been divided. If at the time of bid the dollar return on direct obligations of the federal government is greater than the highest bank return, then the clerk shall invest in the higher return security. Moneys deposited in the registry of the court shall be deposited in interest-bearing certificates at the discretion of the clerk subject to the above guidelines. No clerk investing such funds shall be liable for the loss of any interest when circumstances require the withdrawal of funds placed in a time deposit and needed for immediate payment of county obligations. In any county where local banks refuse to bid on securing such money on interest-bearing certificates, the clerk may request and receive bids from banks in other counties within the state and make such deposits to the successful bidder. All interest accruing from moneys deposited shall be deemed income of the office of the clerk of the circuit court investing such moneys and shall be deposited in the same accounts as are other fees and commissions of the clerk's office. Each clerk shall, as soon as is practicable after the end of the fiscal year, report to the county governing authority the total interest earned on all investments during the preceding year. In construing statutes, effect should be given to all statutes in pari materia if it is at all possible to do so. Implied repeals are not favored; and two statutes which may operate on the same subject without positive inconsistency or repugnancy in practical effect and consequences should both be given the effect designed for them, unless a contrary intent clearly appears. American Bakeries Co. v. Haines City, 180 So. 524
(Fla. 1938). Accord: Ellis v. City of Winter Haven, 60 So.2d 620
(Fla. 1952). For a court to declare that one statute impliedly repeals another, it must appear that there is positive repugnancy between the two, that the last was clearly intended to prescribe the only governing rule, or that it revises the subject matter of the former. Beasley v. Coleman, 180 So. 625 (Fla. 1938). An older statute is not repealed by a later statute merely because the later statute relates to matters covered in whole or in part by a prior statute. State v. Collier County, 171 So.2d 890 (Fla. 1965). Here, the 1973 Legislature not only adopted Ch. 73-282, supra, to authorize the circuit court clerks of this state to invest surplus funds and retain the interest as income of the office; it also amended s. 125.31, supra, to change from "ten days" to a "reasonable time" the time period for designating funds as "surplus funds" for investment by the county commissioners. In these circumstances, and under the rules of construction referred to above, it must be concluded that the Legislature intended to preserve to the county commissioners the right to provide, by resolution, for the investment of surplus funds "in their control or possession" in obligations of the United States Government (or in savings accounts in state and federal savings and loan associations under s. 665.321, F.S., AGO 072-26). When so specified by resolution of the county commissioners, the circuit court clerk, as the custodian of all county funds and as clerk of the board of county commissioners, would be required to carry out the directive of the county commissioners in this respect. In the absence of such a resolution, other funds in the control or possession of the circuit court clerk — including the fees and commissions received by him as circuit court clerk and county recorder, which must ultimately be accounted for to the board of county commissioners and the excess of net income (or unexpended budget balance, if the clerk is a budget officer) paid over to the board — as well as the court registry funds in his custody as clerk of the circuit court, may also be invested by him, as authorized by s. 28.33, supra. In the absence of a directive in s. 125.31, F.S., as to the disposition of the income from investments directed to be made by resolution of the county commissioners, and in light of the express mandate of s. 28.33, F.S., that "[a]ll interest accruing from moneys deposited shall be deemed income of the office of the clerk of the circuit court investing such moneys," I have the view that, pending legislative or judicial clarification, the income from all of such investments — whether directed by the county commissioners or made upon the clerk's own initiative — should be "deposited in the same accounts as are other fees and commissions of the clerk's office." Section 28.33. (An exception to the requirement of s. 28.33 should be noted as to moneys deposited in the court registry in eminent domain proceedings, the earned income from which is credited to the secondary road fund of the county under s. 74.051, F.S., AGO 074- 42.) Subject to the foregoing exception, your first question is answered in the affirmative. AS TO QUESTION 2: Section 28.33, F.S., provides in pertinent part that "[m]oneys deposited in the registry of the court shall be deposited in interest-bearing certificates at the discretion of the clerk, subject to the above guidelines." And s. 665.321, supra, specifically authorizes "public officials" — which would, presumably, include the circuit court clerk — to invest in savings accounts of federal or state supervised savings associations. While the word "shall" in ordinary usage denotes a mandatory connotation, it may be given a permissive interpretation when the legislative intent in this respect is clear. Schneider v. Gustafson Industries, Inc.,139 So.2d 423 (Fla. 1962). It is noteworthy that, in investing county funds, the board of county commissioners and the clerk must necessarily exercise some discretion not only as to the term of the certificates of deposit or other obligations in which the funds are proposed to be invested but also as to what funds may be deemed to be "surplus" and thus may be placed in "time deposits" until needed for a budgeted purpose. And it is reasonable to infer that the legislative intent was to give to the clerk the same discretion as to court registry funds — that is, to estimate the length of the litigation in connection with which a particular fund was deposited in the registry of the court and to determine whether it is worthwhile to place that fund in interest-bearing certificates or accounts. Remembering that the income from the investment will be income of the clerk's office — presumably to defray the clerk's expenses or reimburse the clerk for the costs of handling, accounting for, and administering these funds — with any excess over such costs inuring to the benefit of the general fund of the county, it is fair to assume that the Legislature intended to leave to the clerk's discretion the question of what court-registry funds should be invested in interest-bearing accounts, as in the case of other funds in his custody and control. AS TO QUESTION 3: Section 713.24(1)(a), F.S., provides, generally, that a lien claimed under Part I of Ch. 713, id. (the Mechanics' Lien Law), may be transferred by any person having an interest in the real property upon which the lien is imposed or the contract under which the lien is claimed, from such real property to other security by, inter alia, depositing in the clerk's office a sum of money. Upon filing the certificate of transfer issued by the clerk, the real property is then released from the lien claimed and the lien is transferred to the money so deposited. Section 713.24(1)(b). Any deposit of money is "considered as paid into court and is subject to the provisions of law relative to payments of money into court and the disposition of same." Section 713.24(2). Accordingly, I am of the opinion that money deposited into the clerk's office pursuant to s.713.24(1)(a) may be invested pursuant to the provisions of s.28.33, F.S. If so invested, interest accruing therefrom shall be deemed income of the office of the clerk of the circuit court. Question 3 is answered in the affirmative.